# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TAIR TEN FUNCHES,<br><br>     Plaintiff,<br><br> v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>     Defendant. | 1:10cv0819 DLB<br><br>ORDER REGARDING PLAINTIFF'S<br>SOCIAL SECURITY COMPLAINT |

## BACKGROUND

Plaintiff Tair Ten Funches ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Dennis L. Beck, United States Magistrate Judge.

## FACTS AND PRIOR PROCEEDINGS[1]

Plaintiff filed his application on May 25, 2005, alleging disability since March 10, 2005, due to Valley Fever.  AR 70-72, 81-86.  After his application was denied initially and on reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  AR

---

[1] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

1  57, 58-62, 65-69.  ALJ Michael J. Haubner held a hearing on February 27, 2007, and issued a

2  decision denying benefits on February 15, 2008.  AR 10-20, 444-483.  The Appeals Council

3  denied review on February 25, 2010.  AR 4-7.

4       Hearing Testimony

5       ALJ Haubner held a hearing in Bakersfield, California, on February 27, 2007.  Plaintiff

6  appeared with his attorney, Geoffrey Hayden.  Vocational expert ("VE") Judith Najarian also

7  appeared and testified.  AR 444.

8       Plaintiff testified that he was born in 1984 and completed the twelfth grade.  AR 452.  He

9  took all special education classes in high school.  AR 453.  Plaintiff made $1,700 in 2003 and

10  $345 in 2002, and has not had any other work.  AR 452.  He stopped looking for work two years

11  ago, when his doctor told him he could not work anymore.  AR 453.  Plaintiff was using a

12  wheelchair that was prescribed in August 2006 after he had a thigh abscess.  AR 454.  He was

13  still using the wheelchair even though his doctor told him to try and start walking when he got

14  out of the hospital a few months ago.  AR 455-456.  Plaintiff last drank alcohol about two years

15  ago.  He uses marijuana every day and has a card for it.  AR 457.  Plaintiff thinks of suicide once

16  a week.  AR 457.

17       Plaintiff lives with his mother, sister and stepfather.  AR 460.  He has a driver's license

18  but has not driven since August.  AR 461.  Prior to August, Plaintiff drove five to six times a

19  week.  AR 461.  He currently visits family and friends twice a week.  AR 462.  Prior to August

20  2006, Plaintiff played sports, watched television, played video games and did chores.  AR 463-

21  464.

22       Plaintiff testified that he could stand up for two or three minutes and could walk about

23  five feet.  AR 465.  He thought that he could lift and carry five pounds and concentrate for two or

24  three minutes at a time.  AR 466.

25       When questioned by his attorney, Plaintiff testified that he could not read or write.  AR

26  474.  He was diagnosed with Valley Fever in March 2005 and went to the hospital in July 2006

27  for a left leg abscess.  AR 475.  Plaintiff also explained that it was prior to his Valley Fever

28  diagnosis, not August 2006, that he could play sports, etc.  AR 477.  Plaintiff had schizophrenia

1  for two or three years and is taking medication for the pain of the abscess.  AR 478.  He also uses
2  a morphine pump and has a medical marijuana card.  AR 479.

3          Plaintiff's abscesses are caused by Valley Fever and he does not feel like he is getting any
4  better.  AR 481.

5          For the first hypothetical, the ALJ asked the VE to assume a person who could interact
6  with co-workers and supervisors, deal with the public and understand, carry out and remember
7  simple instructions and tasks.  This person would need a payee to handle his funds.  The VE
8  testified that this person could perform the positions of poultry cutter, box vendor, bag loader and
9  battery stacker.  AR 469-470.

10          For the second hypothetical, the ALJ asked the VE to assume that this person could lift
11  and carry 50 pounds occasionally, 25 pounds frequently, but had to avoid moderate exposure to
12  fumes, dust, gasses, poor ventilation, etc.  The VE testified that this person could perform the
13  positions of battery stacker.  AR 470-472.

14          If the first and second hypotheticals were combined, this person could perform the
15  position of battery stacker.  AR 473.

16          For the third hypothetical, the ALJ asked the VE to assume a person who could
17  concentrate only in two or three minute increments, stand, walk and sit without limitation and lift
18  and carry 250 pounds.  AR 473.  This person could not perform work.  AR 473.

19          For the fourth hypothetical, the ALJ asked the VE to assume that this person could
20  concentrate in two to three minute increments, before needing to rest for five minutes, walk five
21  feet, stand for two to three minutes and lift and carry five pounds.  This person could not perform
22  any work.  AR 473.

23          *Interrogatories to VE*

24          On July 6, 2007, the ALJ sent a list of interrogatories to the VE that included a fifth
25  hypothetical question based on Dr. Dozier's opinion of Plaintiff's physical limitations and Dr.
26  Patel's assessment of Plaintiff's mental limitations.  The ALJ asked the VE to assume that this
27  person could lift/carry 20 pounds occasionally, 10 pounds frequently, sit for six hours, stand for
28  four hours and walk for four hours.  This person needed a cane to ambulate and needed to avoid

rough/uneven terrain.  This person can frequently reach, occasionally climb ramps, stairs, ladders and scaffolds and occasionally balance, stoop, kneel, crouch and crawl.  This person could not work at unprotected heights or around dangerous machinery and could occasionally operate a motor vehicle.  AR 130-133.  The VE responded that this person could perform the unskilled sedentary positions of order clerk, food and beverage, DOT 209.567-014, telephone quotation clerk, DOT 237.367-046, and document preparer, DOT 249.587-018.  AR 141.  If this same person also had a limitation to simple tasks, the same positions would be available.  AR 141.

The ALJ ultimately adopted this hypothetical.

Medical Record[2]

On September 12, 2005, Plaintiff saw Shailesh C. Patel, M.D., for a consultive psychiatric examination.  Plaintiff reported a history of Valley Fever and difficulty breathing, along with feeling depressed.  Plaintiff stated that he was on Prozac for a few months the year prior and denied any psychiatric hospitalizations.  He was not currently receiving psychiatric treatment.  AR 211.

On mental status examination, Plaintiff's affect was appropriate and he complained of being tired.  His thought process was coherent and he was not internally preoccupied or responding to internal stimuli.  Plaintiff was alert and oriented to all spheres.  Remote memory was good and recent memory was fair.  He would not cooperate in registering or repeating a given phone number and said he would not be able to count backwards from 57 to 42.  His fund of knowledge was good.  Judgment and insight were fair.  Plaintiff was partially cooperative during the evaluation.  AR 212.

Dr. Patel diagnosed adjustment disorder with depressed mood and a history of cannabis abuse.  Plaintiff could interact with co-workers and supervisors and could deal with the public. He could understand, remember and carry out simple instructions and perform simple tasks. Plaintiff should have a payee handle his funds.  AR 213.

---

[2] Plaintiff does not dispute the Residual Functional Capacity ("RFC") finding and therefore only pertinent medical evidence will be set forth.

4

1    ALJ's Findings

2        The ALJ determined that Plaintiff had the severe impairments of schizophrenia,

3    adjustment disorder with depressed mood, a history of polysubstance abuse, history of cocci and

4    pneumonia and mild dextroscoliosis at T12-L1.  AR 15.  Despite these impairments, the ALJ

5    found that Plaintiff retained the RFC to perform a range of sedentary work with a limitation to

6    simple tasking.  AR 16.  Plaintiff could not perform his past relevant work, but pursuant to the

7    testimony of the VE, the ALJ found that he could perform a significant number of jobs in the

8    national economy.  AR 19.

9                          **SCOPE OF REVIEW**

10       Congress has provided a limited scope of judicial review of the Commissioner's decision

11   to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations,

12   the Court must determine whether the decision of the Commissioner is supported by substantial

13   evidence.  42 U.S.C. § 405 (g).  Substantial evidence means "more than a mere scintilla,"

14   *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v.*

15   *Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a

16   reasonable mind might accept as adequate to support a conclusion."  *Richardson*, 402 U.S. at

17   401.  The record as a whole must be considered, weighing both the evidence that supports and

18   the evidence that detracts from the Commissioner's conclusion.  *Jones v. Heckler,* 760 F.2d 993,

19   995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must

20   apply the proper legal standards.  *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).

21   This Court must uphold the Commissioner's determination that the claimant is not disabled if the

22   Commissioner applied the proper legal standards, and if the Commissioner's findings are

23   supported by substantial evidence.  *See* *Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d

24   509, 510 (9th Cir. 1987).

25                            **REVIEW**

26       In order to qualify for benefits, a claimant must establish that she is unable to engage in

27   substantial gainful activity due to a medically determinable physical or mental impairment which

28   has lasted or can be expected to last for a continuous period of not less than 12 months.  42

U.S.C. § 1382c (a)(3)(A).  A claimant must show that she has a physical or mental impairment of such severity that she is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process.  20 C.F.R. §§ 404.1520 (a)-(g).  Applying the process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since the alleged onset of his disability; (2) has an impairment or a combination of impairments that is considered "severe" (schizophrenia, adjustment disorder with depressed mood, a history of polysubstance abuse, history of cocci and pneumonia and mild dextroscoliosis at T12-L1) based on the requirements in the Regulations (20 CFR §§ 404.1520(c), 416.920(c)); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in Appendix 1, Subpart P, Regulations No. 4; (4) has no past relevant work; but (5) can perform jobs that exist in significant numbers in the national economy.  AR 15-20.

Here, Plaintiff alleges that his limitation to simple tasks precludes performance of the positions identified by the VE at step five of the sequential evaluation process.

## DISCUSSION

Plaintiff contends that he is unable to perform the alternate positions identified by the VE because the positions have a Reasoning Level of 3.  Plaintiff believes that his limitation to simple tasks does not allow for the performance of such positions.  He does not contest the RFC finding itself.

At step five, the ALJ can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her residual functional capacity, would be able to do; and (2) the availability of such jobs in the national economy.  *Tackett v. Apfel*, 180 F.3d 1094 (9th Cir. 1999).  At the hearing, the ALJ poses hypothetical questions to the vocational expert that set out

1   all of the claimant's impairments for the vocational expert's consideration.  *Id.* (internal citations

2   omitted).  The ALJ's depiction of the claimant's disability must be accurate, detailed, and

3   supported by the medical record.  The vocational expert then  "'translates [these] factual

4   scenarios into realistic job market probabilities' by testifying on the record to what kinds of jobs

5   the claimant still can perform and whether there is a sufficient number of those jobs available in

6   the claimant's region or in several other regions of the economy to support a finding of 'not

7   disabled.'" *Id.* (citing *Desrosiers v. Secy. Health and Human Serv.*, 846 F.2d 573, 578 (9th Cir.

8   1988).

9       When asked to identify positions in response to the hypothetical that was ultimately

10  adopted, the VE identified the unskilled sedentary positions of (1) order clerk, food and

11  beverage, DOT 209.567-014; (2) telephone quotation clerk, DOT 237.367-046; and (3) document

12  preparer, DOT 249.587-018.  AR 141.  Each of these positions has a Reasoning Level of 3,

13  which requires the ability to "[a]pply commonsense understanding to carry out instructions

14  furnished in written, oral or diagrammatic form" and "[d]eal with problems involving several

15  concrete variables in or from standardized situations."  Exhibit 1, attached to Opening Brief.

16      Plaintiff's argument is based on his belief that a Reasoning Level of 3 requires abilities

17  beyond his RFC for simple tasks.  In support, he cites *Hackett v. Barnhart*, 395 F.3d 1168 (10th

18  Cir. 2005).  There, the claimant was limited to "simple and routine work tasks."  The court found

19  that this limitation seemed inconsistent with positions with a Reasoning Level of 3.  As the ALJ

20  failed to elicit an explanation for the conflict, the court remanded the action.  *Hackett*, 395 F.3d

21  at 1176.  Plaintiff also cites numerous district court cases within the Ninth Circuit that have

22  followed the holding in *Hackett.*

23      Defendant does not dispute the fact that the cited positions require a Reasoning Level of

24  3.  Instead, Defendant tries to draw a distinction between "simple tasks" and "simple, repetitive

25  tasks," arguing that the former is less restrictive and therefore compatible with a Reasoning Level

26  of 3.  Defendant cites *Meissl v. Barnhart*, 403 F.Supp.2d 981, 982 (C.D. Cal. 2005), where the

27  court noted that "the ALJ found that Meissl could perform not just simple tasks but also ones that

28  had some element of repetitiveness to them."  The Court will not, however, rely on this vague

1  statement to draw a legal conclusion that "simple tasks" are commensurate with a Reasoning

2  Level of 3.

3          Defendant also argues that the rationale set forth in *Meissl* applies to the instant action.

4  The court explained that the Social Security regulations separate a claimant's ability to

5  understand into just two categories: "short and simple instructions" and "detailed" or "complex"

6  instructions.  *Id*. at 984.  In contrast, the DOT "employs a much more graduated, measured and

7  finely tuned scale starting from the most mundane. . .moving up to the most complex." *Id.*  The

8  court cautioned against "such a neat, one-to-one parallel," i.e., equating the Social Security's use

9  of the term "simple" with the DOT's use of "simple" and concluding that a limitation to "simple"

10 work necessarily means that the claimant could not perform any positions with a Reasoning

11 Level of 2 or higher.  *Id*.

12         Defendant suggests that this analysis "is perfectly reasonable and applies equally to a

13 reasoning level of three."  Opposition, at 6.  Defendant acknowledges that the *Meissl* court

14 specifically declined to decide whether a limitation to "simple tasks performed at a routine pace"

15 was consistent with a Reasoning Level of 3, yet asks this Court to make a similar finding.

16 Defendant reasons that since there are six gradations of work complexity in the DOT, "the first

17 three DOT gradations should at least approximately correspond to the first level in Social

18 Security."  Opposition, at 6.  This is exactly the type of "blunderbuss" approach, however, that

19 the *Meissl* court cautioned against.  *Meissl*, at 984.

20         Given the significant case law within this Circuit that questions whether a claimant

21 limited to simple, repetitive work is capable of performing jobs with a Reasoning Level of 3, the

22 Court will not reach a different conclusion simply because Plaintiff's RFC does not include a

23 limitation to repetitive work.  *Bagshaw v. Astrue*, 2010 WL 256544, *5 (C.D.Cal. 2010) (citing

24 *Hackett* in concluding that a mail clerk job, which requires a Reasoning Level of 3, was

25 inconsistent with a limitation to simple, routine work); *McGensy v. Astrue*, 2010 WL 1875810,

26 *3 (C.D.Cal. 2010) (noting that while case law has held that "a limitation to 'simple, repetitive

27 tasks" is consistent with level two reasoning," this restriction is "inconsistent" with the

28 requirements for a Reasoning Level of 3); *Torrez v. Astrue*, 2010 WL 2555847, *9 (E.D.Cal.

2010) (finding that the DOT precludes a person limited to simple, repetitive tasks from performing work with a Reasoning Level of 3); *Tudino v. Barnhart*, 2008 WL 4161443, *11 (S.D.Cal. 2008) ("[l]evel-two reasoning appears to be the breaking point for those individuals limited to performing only simple repetitive tasks"); *Squier v. Astrue*, 2008 WL 2537129, *5 (C.D.Cal. 2008) (A Reasoning Level of 3 is "inconsistent with a limitation to simple repetitive work.").

As the Court will not simply conclude that a limitation to simple tasks is consistent with a Reasoning Level of 3, a conflict existed between the DOT and the VE's testimony.[3]  Under these circumstances, the ALJ is required to determine whether a conflict exists and, if so, "whether the vocational expert's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the Dictionary of Occupational Titles." *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007); *see also Johnson v. Shalala*, 60 F.3d 1428, 1435 (9th Cir. 1995) (stating that an ALJ may rely on expert testimony which contradicts the DOT "only insofar as the record contains persuasive evidence to support the deviation").

In his decision, the ALJ states that "the testimony and interrogatories of the vocational expert are consistent with the information contained in the *Dictionary of Occupational Titles*" and concludes that Plaintiff can perform work that exists in significant numbers in the national economy.  AR 20.  There is no indication in either the testimony or the interrogatories, however, that the ALJ asked the VE whether a conflict existed.  The ALJ therefore took it upon himself to conclude, incorrectly, that the testimony was consistent.  By not posing this question to the VE, the Court cannot determine whether the ALJ's finding at step five was supported by substantial evidence.

**REMAND**

Section 405(g) of Title 42 of the United States Code provides: "the court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the cause for a rehearing."

___

[3] The Court notes that the three positions identified in response to the first hypothetical, which included Plaintiff's limitation to simple tasks with no physical restrictions, had a Reasoning Level of 1.  AR 469-470.

In social security cases, the decision to remand to the Commissioner for further proceedings or simply to award benefits is within the discretion of the court. *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.  Where, however, a rehearing would simply delay receipt of benefits, reversal and an award of benefits is appropriate."  *Id.* (citation omitted); *see also Varney v. Secretary of Health & Human Serv.*, 859 F.2d 1396, 1399 (9th Cir.1988) ("Generally, we direct the award of benefits in cases where no useful purpose would be served by further administrative proceedings, or where the record has been thoroughly developed.").

Here, the Court finds that the step five error can be remedied with further proceedings. On remand, the ALJ should obtain a reasonable explanation from the VE for the conflict between her testimony and the DOT.  *See Massachi*, 486 F.3d at 1153-1154 & n. 19 (vacating in part with instructions to remand where "we have an apparent conflict with no basis for the vocational expert's deviation," and therefore the court "cannot determine whether the ALJ properly relied on [the VE's] testimony" at step five;  *Prochaska*, 454 F.3d at 736 (reversing and remanding to permit the ALJ to resolve a "potential inconsistency" between the VE's testimony and the DOT where the claimant could not reach above shoulder level, and therefore it was not clear whether she could perform the job of cashier as defined by the DOT).

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence and is therefore REVERSED and the case is REMANDED to the ALJ for further proceedings consistent with this opinion.  The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Tair Ten Funches and against Defendant Michael J. Astrue, Commissioner of Social Security.


IT IS SO ORDERED.

Dated:   **April 18, 2011**          _____**/s/ Dennis L. Beck**_____
                                          UNITED STATES MAGISTRATE JUDGE